IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-03179-RBJ

JASON ROTHE,
CARLOS MARTINEZ AND
ANDREW BRYANT, Individually and
On Behalf of Others Similarly Situated,

    Plaintiffs,

vs.

BATTELLE MEMORIAL INSTITUTE,

    Defendant.

---

**JOINT MOTION FOR CERTIFICATION OF CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

---

Pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23(e), Plaintiffs Jason Rothe, Carlos Martinez, and Andrew Bryant ("Plaintiffs") and Defendant Battelle Memorial Institute ("Defendant" or "Battelle") (collectively, the "Parties") jointly move for certification of the alleged collective action and class under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and Rule 23 and for preliminary approval of the executed Settlement Agreement (the "Settlement Agreement"), attached as Exhibit A.

### I.   Facts and Procedural History

On December 12, 2018, Jason Rothe, Carlos Martinez, and Andrew Bryant, on behalf of themselves and other similarly situated employees of Battelle, filed a Complaint in this Court alleging that Battelle violated the FLSA and Colorado wage and hour laws, specifically the Colorado Wage Claim Act ("CWCA"), COLO. REV. STAT. §§ 8-4-2, *et seq*., and the Colorado Minimum Wage Order No. 34 ("CMWO"), 7 C.C.R. § 1103-1 CWCA.

1

[Doc. 1.][1] The Complaint alleges that Plaintiffs and other similarly situated employees of Battelle at the Pueblo Chemical Depot, Chemical Agent-Destruction Pilot Plant ("PCAPP") in Pueblo, Colorado were not paid for work performed during 30-minute meal breaks, resulting in unpaid regular and overtime wages under state and federal law. Specifically, Plaintiffs claim they were routinely interrupted during meal periods by co-workers, managers, alarms, PA announcements, and radio calls, resulting in them being "actively on call" and/or performing work during their meal periods. See id. ¶ 38.

On February 12, 2019, Battelle answered the Complaint, denying the allegations. [Doc. 21.]

On May 3, 2019, the Court entered an Order setting this case for trial on March 8, 2021. [Doc. 28.] The case has not yet been certified, conditionally or otherwise, as a collective or class action.

The Parties, represented by experienced counsel on both sides, reached an agreement in principle to settle this case following a full day mediation on October 27, 2020 with a third-party mediator jointly selected by the Parties. [Doc. 40.] Following the mediation, the parties negotiated the written terms of the Settlement Agreement attached as Exhibit A.  The terms of the settlement reflect several months of arms-length negotiations between the Parties dating back prior to the mediation and contain a fair and reasonable settlement of the claims in this case.

## II.     Summary of the Settlement Terms

### A.     Settlement Background And Procedure.

---

[1] [Doc. #] refers to the filing number of a document on the Case Management/Electronic Case Filing system for this civil action.

The Settlement Agreement provides that, for purposes of settlement only, the Parties agree to certify the proposed class as defined in Paragraph 46.a-b of the Complaint. [Doc. 1 at 10-11.] The Parties agree that, for purposes of this Joint Motion only and to effectuate a settlement, the members of the proposed class ("Class Members") are sufficiently similarly situated for this Court to certify a collective and class action.

The Parties' intention is to resolve all claims that were raised or could have been raised in this case. For purposes of this settlement, the Parties agree to certify a class under Federal Rule of Civil Procedure 23(b)(3) to resolve all claims on behalf of all Rule 23 Class Members (including those who have opted-in to the collective action and those who have not opted-in). The Parties' agreements regarding collective action and class treatment are expressly subject to the limitations set out in the Settlement Agreement.

Should this Court certify the proposed class and preliminarily approve the Settlement Agreement, a third-party claims administrator ("Settlement Administrator") will send a Notice of Preliminary Approval of Settlement and Hearing Date for Final Court Approval ("Notice") and Opt-Out Form to each Class Members. The Notice and Opt-Out Form are appended as Exhibits 1 and 2, respectively, to the Settlement Agreement. The Notice informs each Class Member of the basic terms of the Settlement Agreement, as well as the estimated potential damages of the Class Member receiving the Class Notice. The Settlement Agreement also establishes a timeline and procedure for Class Members to object to or opt out of the action for purposes of settlement ("Opt-out Period").

Following the close of the Opt-out Period, the Parties will jointly move for final approval of the Settlement Agreement ("Final Approval"). The Settlement Administrator will mail remuneration ("Settlement Checks") to Class Members who do not opt out of the

Settlement Agreement after any appeal of this Court's Final Approval of the Settlement Agreement is either resolved or time barred.

### B. Settlement Terms And Methodology.

The total amount to be paid by Battelle in settlement of this action is $4,650,000.00 (the "Settlement Fund"). The Settlement Fund resolves any and all claims within the scope of the release set forth in Section VIII of the Settlement Agreement, up to and including the date of Final Approval. The Settlement Fund represents only back wages (and certain related employer and employee tax withholdings as agreed to by the parties) and includes no liquidated damages, penalties, or other amounts which may have been recoverable under federal or state law in this case. The Settlement, less deduction for payments to class representatives, attorneys' fees and costs, and the costs of administration of the Settlement[2] (the "Net Settlement Amount"), will be distributed to each Class Member based upon a pro rata share (stated as a percentage). Each Class Member will receive a share of the Net Settlement Amount proportionate to such person's estimated alleged damages as described in Section XII of the Settlement Agreement.

### III.   Legal Argument

### A.   The Court Should Certify The Class For Purposes Of Settlement.

The Parties seek certification of the Class relating to Plaintiffs' claim for unpaid wages under the FLSA and CWCA/CMWO. In hybrid actions, such as this one, parties may request the certification of a class in their motion for preliminary approval of the settlement agreement. *See Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125

---

[2] The total costs are in the amount of $108,800.00 (which include payments to named plaintiffs of $80,000.00; Settlement administration costs of $16,000.00; and Plaintiffs' attorney's costs of $12,800.00).

(D. Colo. Feb. 8, 2016) (citing Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004)).

To obtain certification of the Class for this purpose, the Parties must demonstrate only that class certification is appropriate under the same standards applied to a motion for conditional certification of a proposed collective action under the FLSA. *See id*.  This requires a showing that there is a "reasonable basis" for the court to conclude that the proposed class includes other similarly situated employees, *Daugherty v. Encana Oil & Gas (USA), Inc.,* 838 F. Supp. 2d 1127, 1132 (D. Colo. Dec. 20, 2011) (internal citation omitted), which generally requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* (*quoting Thiessen v. Gen. Elec. Cap. Corp.,* 267 F.3d 1095, 1102 (10th Cir. 2001) (internal quotations omitted). This is a "lenient standard," which "typically results in conditional certification of a representative class." *Id*. (*quoting Renfro v. Spartan Comp. Servs., Inc.*, 243 F.R.D.431, 432 (D. Kan. June 20, 2007)) (internal quotations omitted).

Here, the Parties have presented sufficient information for this Court to certify the Class.  Plaintiffs have alleged (*and the Parties agree for purposes of obtaining approval of the Settlement Agreement only*) that Class Members (1) are or were (during the relevant time period) employed as Monitoring Technicians or Demil Technicians or other similar non-exempt hourly-paid employees for the Defendant at PCAPP; and allege they were actively on call or otherwise interrupted during their meal periods yet were not compensated for such time.  [Doc. 1 at 7-9, ¶¶ 26-38.].  Defendant does not contest such allegations for purposes of this Motion.  These allegations are sufficient to show that the Class Members are similarly situated under the FLSA. Therefore, the Court should certify

5

the Collective Action for purposes of effecting preliminary and final approval of the Settlement Agreement.

### B. The Court Should Grant Preliminary Approval Because The Parties Have Made The Required Showing That The Rule 23 Factors Are Met.

A class action under Rule 23 may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. P. 23(e). The object of preliminary approval is for the Court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. Mar. 22, 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing"); *In re Motor Fuel Temperature Sales Practices Litig.*, 2011 WL 4431090, at *5 (D. Kan. Sept. 22, 2011) (internal quotation omitted) ("The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."). If the settlement is preliminarily approved, the Court enters a preliminary approval order directing the preparation of notice to class members and setting forth a schedule for objections.

At this stage, the Court should make the preliminary determination that the proposed Class satisfies the four requirements of Rule 23(a) and Rule 23(b)(3), subject to a final determination at the fairness hearing. *See* Manual for Complex Litigation § 21.632; *In re Motor Fuel Temperature Sales Prac. Litig.*, 258 F.R.D. at 678–80; *Pliego,* 313 F.R.D. at 125.

Each of these requirements is addressed below.

**Numerosity**. Rule 23(a)(1) requires that a proposed settlement be "so numerous that joinder of all class members is impracticable." "There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Gianzero v. Wal-Mart Stores, Inc.*, 2010 U.S. Dist. LEXIS 38426, 2010 WL 1258071, at *2 (D. Colo. Mar. 29, 2010). Here, using Battelle's payroll records, the parties have identified approximately 229 Class Members, a number that satisfies the numerosity requirement. *See Bass v. PJCOMN Acquisition Corp.*, 2011 U.S. Dist. LEXIS 58352, 2011 WL 2149602, *5 (D. Colo. June 1, 2011) (joinder of between fifty and three hundred pizza delivery drivers is impractical).

**Commonality**. The commonality requirement is satisfied when there are "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "This inquiry requires the Court to find only whether common questions of law or fact exist." *In re Motor Fuel*, 258 F.R.D. at 679. Here, the Class Members are joined by the common questions of law and fact that arise from Battelle's alleged failure to allow Class Members to take an uninterrupted 30-minute meal break for each shift worked.

**Typicality**. Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The named plaintiffs' claims need not be identical to those of other class members; instead, this element "requires that representative plaintiffs possess the same interests and suffer the same injuries as the proposed class members." *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D. Kan. May 10, 1991). The typicality requirement is satisfied here because Plaintiffs' claims

arise from the same factual nexus and is based on the same legal theories as the claims of Class Members. Defendant classified all Class Members as non-exempt employees and each worked at the same facility and was subject to the same company policies, practices and requirements with respect to performing work at the PCAPP facility, including meal breaks. In short, each Class Member suffered the same alleged violations that Plaintiffs challenge with their claims.

**Adequacy of Representation**. The adequacy requirement is satisfied when "the Representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Here, Plaintiffs' counsel has diligently litigated this case since its inception, and it has significant experience in wage and hour class actions in particular, including the resolution of complex cases through settlement. Ex. B, Preston Decl. ¶¶ 1-7. Accordingly, Plaintiffs' counsel is qualified to represent the interests of the Class Members. Likewise, there are no conflicts between Plaintiffs and the other Class Members.

**Predominance and Superiority**. In addition to meeting the prerequisites for class certification under Rule 23(a), a class must also meet one of the three alternative requirements for treatment as a class action under Federal Rule of Civil Procedure 23(b). Here, Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(b)(3). Class certification is proper under Rule 23(b)(3) where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." A class action is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging identical causes of action would not serve the interests of judicial

economy. Additionally, absent Class Members to date have shown no interest in controlling the litigation of separate actions because no other litigation regarding this controversy has been commenced. The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of hourly workers. Courts in this District have repeatedly recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued. *Belote v. Rivet Software, Inc.*, 2013 U.S. Dist. LEXIS 74529, 2013 WL 2317243, at *2 (D. Colo. May 28, 2013); *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 482 (D. Colo. July 29, 1998).

    **C.    The Proposed Settlement Agreement Should Be Approved Because It Is Fair And Reasonable.**

In actions involving FLSA claims, such as the one here, "the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." *Morton v. Transcend Servs.*, 2017 WL 977812, *1 (D. Colo. March 13, 2017) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Approval should be granted when: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Id*. (*citing Lynn's Food Store*, 679 F.2d at 1354). As discussed below, all three elements are satisfied, and therefore the Court should preliminarily approve the Settlement Agreement.

    **1.    A Bona Fide Dispute Exists Between The Parties.**

Parties "requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists." *Id*. (*citing Dees*

9

*v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. Apr. 19, 2010)). "To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Id*. (*citing Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 718 (E.D. La. July 9, 2008)).

In this case, Plaintiffs filed a complaint on behalf of themselves and other similarly situated non-exempt Battelle monitoring technicians at PCAPP asserting claims under the FLSA and Colorado law.  During the relevant time period, Plaintiffs allege that Class Members were required to be actively on call during their meal periods, and often required to respond to calls and perform other work during their meal periods; they rarely, if ever, received an uninterrupted 30 minute meal break; and Defendant failed to pay regular non-overtime wages and overtime wages and other compensation to the Class Members for hours worked during their meal periods by automatically deducting 30 minutes of time for the meal periods each workday.  [Doc. 1 at 7-9, ¶¶ 26-38.].   Battelle denies the allegations in the Complaint and disputes that all Class Members were denied an uninterrupted 30-minute meal break for every shift work during the relevant statutory time periods at issue. In particular, Battelle notes that the fact that Plaintiffs were required to carry personal protective gear, or could have been required to occasionally respond to alarms, does not mean they were not fully relieved from duty or denied a bona fide meal period under the FLSA.  *See* 29 C.F.R. § 785.19.  Additionally, Battelle disputes that Plaintiffs were

interrupted during all or most meal periods as claimed. Battelle also notes that the Plaintiffs' failure to report the claimed unpaid hours associated with each meal period in the company's timecard system could be fatal to their claims. *Brown v. ScriptPro,* LLC, 700 F.3d 1222, 1230–31 (10th Cir. 2012) (although there was no dispute employee worked overtime hours, employee failed to keep any record of the hours worked, and because he could have recorded the time in the timekeeping system, the court refused to award him any overtime).

The Court should therefore grant this Joint Motion because bona fide legal and factual disputes exist, and settlement will fairly resolve these disputes without having to engage in costly litigation.

### 2. The Settlement Agreement Is Fair And Reasonable.

An FLSA settlement must be fair and reasonable. *Morton*, 2017 WL 977812, at *2. A settlement is fair and reasonable if it provides "adequate compensation to the employees and [does] not frustrate the FLSA policy rationales." *Id*. When evaluating whether a settlement agreement meets this standard, the Tenth Circuit considers the following factors: "(1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id*. (*citing Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). All of these factors weigh in favor of approving the Settlement Agreement.

*First*, the Parties fairly and honestly negotiated the Settlement Agreement. The Parties each were represented by experienced counsel in the negotiations. The Parties

exchanged initial disclosures, engaged in a first round of written discovery, and discussed damages calculations for a period of several months before the mediation on October 27, 2020. The Parties also relied on accurate timekeeping and payroll information provided by Battelle to inform their discussions as to a fair and reasonable amount for Class Members' alleged damages. Experienced counsel on both sides agree that the settlement is fair and reasonable and in the best interests of their clients.

*Second*, questions of law and fact exist which place the ultimate outcome of the litigation in doubt. Plaintiffs contend that Battelle did not provide a meal period that is "uninterrupted and duty free" under the CMWO and the case law interpreting that provision (as well as the FLSA) because employees were required to respond to work-related demands during those periods. Colo. Minimum Wage Order No. 35, 7 Code Colo. Regs. 1103-1(7); *HCA-HealthONE LLC v. Colo. Dep't of Labor & d Emp't*, 2020 Colo. App. LEXIS 658 at *1–2 (Colo. App. 2020). Battelle contends that the facts would show otherwise and that Plaintiffs were required by company policy to either restart their 30 minute meal periods if interrupted or be paid an addition 30 minutes for any interrupted meal breaks. The Parties thus seriously dispute what it means to be "uninterrupted and duty free" and whether the facts in any event would show that Battelle violated state or federal law.

*Third*, the value of immediate recovery outweighs the mere possibility of future relief after protracted litigation. Substantial discovery remains to be taken in this case, including days of depositions of representative plaintiffs who would be forced to take a leave of absence and miss scheduled work shifts to appear. Dispositive motions would likely follow and the Parties may still have to engage in expert discovery and miscellaneous motions practice. The Parties then face the prospect of a 10-day jury trial and the time and

energy such undertaking entails. [Doc. 28.] The Settlement Agreement compensates Class Members without delay based on their pro rata share of the Net Settlement Amount based on the calculation methodology agreed on by the Parties. Ex. A at 11–12, § XII.D. Class Members who do not opt out of the settlement will almost certainly receive at least 100% of back wages that could have been recoverable after trial in this matter because the Net Settlement Amount is greater than such amount even under a liberal calculation of the total estimated recovery in this case. *See* Ex. B, Preston Decl. ¶ 27. Plaintiffs are non-exempt hourly workers who would likely value the promptest possible receipt of back wages and would want to avoid having to spend valuable time on further litigation.

*Fourth*, the Parties agree that the Settlement Agreement is fair and reasonable. Plaintiffs' counsel has litigated numerous FLSA collective actions and state law wage and hour class actions in Colorado and around the country. Ex. B, Preston Decl. ¶ 4. In many of those cases, Plaintiffs' counsel has negotiated settlements on both an individual and a class-wide basis, and is experienced in addressing the issues that arise in complex litigation and settlements. Thus, Plaintiffs' counsels' experience representing parties in FLSA collective actions and Rule 23 class actions is substantial.

In sum, because the Settlement Agreement is the product of fair and honest arm's-length negotiations by experienced counsel and provides substantial relief to Plaintiffs and Class Members and eliminates the inherent risks both sides would bear if this complex and deeply contested litigation continued to resolution, the Court should approve the Settlement Agreement. *See Albu v. Delta Mech. Inc.*, 2015 U.S. Dist. LEXIS 95485, at *9 (D. Colo. June 30, 2015) (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1354) (noting that settlement agreements negotiated at arm's-length by experienced counsel are entitled to "a

presumption of fairness"). By approving the Settlement Agreement, this Court would further the FLSA's policy rationale by allowing the Parties to fairly and reasonably resolve their claims.

### D. The Proposed Enhancement Award Is Reasonable.

Named Plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pliego*, 313 F.R.D. at 131 (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases."). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable" in similar cases). Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pliego*, 313 F.R.D. at 131. Courts in this Circuit have also considered whether the named plaintiff in an FLSA collective action agreed to grant a defendant employer a broader general release in addition to releasing their FLSA claims in assessing the reasonableness of an incentive award. *See, e.g.*, *Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs "substantially higher" than normal service awards of $20,000 each where they agreed to a general release). Importantly, Courts in this District (including this

Court) have found similar incentive awards reasonable in other FLSA/employment cases. *See, e.g.*, *id.*; *Aragon v. Clear Water Products, LLC*, 2018 WL 6620724, at *8 (D. Colo. Dec. 18, 2018) (approving $7,000 incentive award to named plaintiff in FLSA class and collective action); *Shaulis v. Falcon Subsidiary, LLC*, 2018 WL 4620388, at *1 (D. Colo. Sept. 26, 2018) (approving incentive awards of $7,500 to both named plaintiffs in FLSA class and collective action); *Pliego*, 313 F.R.D. at 131; *Shaw v. Interthinx, Inc.*, 2015 WL 1867861 at *8–9 (D. Colo. Apr. 21, 2015) (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010) (approving $10,000 service award to named plaintiff).

The proposed enhancement award to the three named Plaintiffs of $80,000 is reasonable and Battelle, by this Motion, consents to paying the same as part of the Settlement Agreement. It is intended to recognize named Plaintiffs' initiative and efforts in this lawsuit and on behalf of the putative Class Members. The named Plaintiffs took a substantial risk in bringing forth claims relating to Battelle's alleged violations and representing the Class Members when no other employees were willing to do so. Moreover, the named Plaintiffs expended significant effort and time in educating their counsel regarding their work and job experiences, and Battelle's policies and procedures, as well as in assisting in the litigation by reviewing and evaluating the arguments put forth by Battelle, including reviewing and answering formal written discovery and participating in settlement discussions and the settlement approval process.

Accordingly, the proposed incentive award agreed to by the Parties is reasonable to compensate the named Plaintiffs.

### E. The Requested Attorneys' Fees And Costs Are Reasonable.

To approve the Settlement Agreement, this Court must be satisfied that the award of attorneys' fees and costs is reasonable. *Morton*, 2017 WL 977812, at *2. The Settlement Agreement provides Plaintiffs' counsel with attorneys' fees and costs amounting to 33% of the Settlement Fund. If approved, Battelle does not oppose this award of attorneys' fees and costs.

The FLSA provides "[t]he court … shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 28 U.S.C. § 216(b). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *Ali v. Jerusalem Restaurant, Inc.*, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015).

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *See Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 484 (10th Cir.1998); *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993); *Lucken Family Ltd. Partnership*, 2010 WL 5387559 at *2. In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry,* 43 F.3d 474, 482–83 (10th Cir. 1994). The percentage of the common fund method has the advantage

of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010), *vacated in part on other grounds*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in class actions, some courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which are historically applied in performing a lodestar analysis, and consist of: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee Case is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc*., 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id*.

Considering the circumstances presented herein, Plaintiffs' counsel's requested attorney fees and litigation expenses are imminently reasonable as both a percentage of the total common settlement fund and under the *Johnson* factors.

### F.     The Court Should Approve The Parties' Proposed Settlement Notice Procedure And Settlement Forms.

Preliminary approval of the Settlement Agreement will enable any approved settlement notice and claim documents to be sent to the Class Members in a manner best

calculated to ensure they are alerted to the terms of the settlement. Every worker who elects to participate in this case because of the settlement notice will know exactly the nature of this FLSA collective action / Rule 23 lawsuit, what they are getting, and what they are giving up, allowing them to make an informed decision to participate. The Parties' proposed Notice – which will be sent by the Settlement Administrator via first class mail – provides the Class Members with adequate notice of their rights under the Agreement. Moreover, the Claim Form is a simple short form that permits Class Members to claim their settlement money quickly and easily. For these reasons, the Court should approve the Parties' proposed Class Notice and associated forms and procedures.

## IV.   Conclusion

For the reasons set forth in detail herein, the Court should certify the Parties' proposed settlement class for purposes of settlement only, preliminarily approve the Parties' agreed-upon Settlement Agreement, and approve the Parties' proposed Notice and associated forms and procedures.

Respectfully submitted January 8, 2021.

  s/Sharon Preston_____
Sharon Preston
PRESTON & BRAR, LLC
670 East 3900 South, Suite 101
Salt Lake City, Utah 84107
Phone: (801) 269-9541
Fax: (801) 269-9581
Email: sharon@prestonbrar.com

**ATTORNEY FOR PLAINTIFFS**

s/Mark B. Wiletsky_____
Mark B. Wiletsky
HOLLAND & HART LLP
1800 Broadway, Ste. 300
Boulder, CO 80302
Phone: 303-473-2864
Fax: 303-975-5292
MBWiletsky@hollandhart.com

s/Jeremy B. Merkelson_____
Jeremy B. Merkelson
HOLLAND & HART LLP
901 K Street NW, Suite 850

        Washington, DC 20004
        Phone: 202-654-6919
        Fax: 303-975-5292
        JBMerkelson@hollandhart.com

        **ATTORNEYS FOR DEFFENDANT**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on January 8, 2021, I have caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to the following individual:

Sharon Preston
Email: sharon@prestonbrar.com

                                        *s/ Craig Radoci*
                                        Craig Radoci

15702365_v5