**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-03179-RBJ

JASON ROTHE,
CARLOS MARTINEZ AND
ANDREW BRYANT, Individually and
On Behalf of Others Similarly Situated,

Plaintiffs,

vs.

BATTELLE MEMORIAL INSTITUTE,

Defendant.

## JOINT MOTION FOR FINAL CERTIFICATION OF CLASS AND COLLECTIVE ACTION AND FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

Pursuant to 29 U.S.C. § 216(b) and Federal Rule of Civil Procedure 23(e), Plaintiffs Jason Rothe, Carlos Martinez, and Andrew Bryant ("Plaintiffs") and Defendant Battelle Memorial Institute ("Defendant" or "Battelle") (collectively, the "Parties") jointly request final certification of the proposed class and collective action and for final approval of the Settlement Agreement (the "Settlement Agreement").

On January 11, 2021, the Court preliminarily approved the Settlement Agreement and certified the proposed collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and proposed class action under Fed. R. Civ. P. 23 for settlement purposes and approved the form of class notice to be sent to the class/collective by the settlement administrator. Doc. 48 (minute order).[1]

---

[1] "Doc. __" refers to the filing number of a document on the Case Management/Electronic Case Filing system for this civil action.

On April 13, 2021, notice was sent to all Class Members[2] by the means approved by the Court by the settlement administrator, Simpluris, Inc. ("Settlement Administrator"), with the approved opt-out form. *See* Ex. 1, Declaration of Christina Fowler ("Fowler Decl."), ¶¶ 1-8. Since then, no opt-out forms were returned, and no objections made by any Class Member. *Id*., ¶¶ 11-13, and Ex. B thereto. The Parties now respectfully seek final approval of the Settlement Agreement, s*ee* Fed. R. Civ. P. 23(e), at the fairness hearing scheduled for June 24, 2021, at 8:30 a.m. *See* Doc. 59.

## I.   BACKGROUND

Plaintiffs Jason Rothe, Carlos Martinez, and Andrew Bryant, on behalf of themselves and other similarly situated employees of Battelle, filed a Complaint in this Court alleging that Battelle violated the FLSA and Colorado wage and hour laws, specifically the Colorado Wage Claim Act ("CWCA"), COLO. REV. STAT. §§ 8-4-2, *et seq*., and the Colorado Minimum Wage Order No. 34 ("CMWO"), 7 C.C.R. § 1103-1 CWCA. *See* Doc. 1. The Complaint alleges that Plaintiffs and other similarly situated employees of Battelle at the Pueblo Chemical Depot, Chemical Agent-Destruction Pilot Plant ("PCAPP") in Pueblo, Colorado were not paid for work performed during 30-minute meal breaks, resulting in unpaid regular and overtime wages under state and federal law. *Id*. Specifically, Plaintiffs claim they were routinely interrupted during meal periods by co-workers, managers, alarms, PA announcements, and radio calls, resulting in them being "actively on call" and/or performing work during their meal periods. *Id*. ¶ 38. A total of 67 current and former employees opted into the FLSA collective action. *See* Docs. 1, 8, 30.

On February 12, 2019, Battelle answered the Complaint, denying the allegations. *See* Doc. 21.

---

[2] Notice was ultimately undeliverable to one of the 274 Class Members. Ex. 1, ¶ 9. That person is deceased. *Id*.

Plaintiffs investigated the alleged violations during discovery and responded to the discovery requests from the Defendant. In addition to reviewing various documents from the Defendant and payroll records of numerous opt-in plaintiffs, Plaintiffs' counsel conducted interviews of numerous employees, including approximately 30 video-recorded interviews of the class members. *See* Doc. 47-2, ¶¶ 14-16.

The Parties, represented by experienced counsel on both sides, reached an agreement in principle to settle this case following a full day mediation on October 27, 2020, with a third-party mediator jointly selected by the Parties. *Id.*, ¶ 11. Following the mediation, the Parties negotiated the specific written terms of the Settlement Agreement and resolved other remaining issues in the litigation. *Id*., ¶¶ 12. The terms of the settlement reflect several months of arms-length negotiations between the Parties dating back prior to the mediation and contain a fair and reasonable settlement of the claims in this case, as this Court has already found in granting preliminary approval.

## II.     SUMMARY OF THE SETTLEMENT TERMS

### A.     Settlement Background and Procedure

The fully executed Settlement Agreement (Doc. 47-1), provides that, for purposes of settlement only, the Parties agreed to certify the proposed class and collective action as defined in Paragraph 46.a-b of the Complaint (Doc. 1 at pp. 10-11). The Court preliminarily certified the class and collective action and granted preliminary approval of the Settlement Agreement on January 11. 2021. *See* Doc. 48.

The Settlement Administrator delivered the Notice of Preliminary Approval of Settlement and Hearing Date for Final Court Approval ("Notice") and Opt-Out Form to each Class Member on April 13, 2021. Ex. 1, ¶ 8. Pursuant to the terms of the Settlement Agreement, there were re-mailings of undeliverable notices to the current addresses of the Class Members located by the

3

Settlement Administrator and the Plaintiffs' counsel. *Id.*, ¶ 9. At the close of the opt-out period, the Settlement Administrator had not received any opt-out forms and no Class Members have opted out. *Id.*, ¶¶ 11-13.

**B.      Settlement Terms and Methodology for Distribution**

The total amount to be paid by Battelle in settlement of this action is $4,650,000.00 (the "Settlement Fund"). Doc. 47-1, p. 4. The Settlement Fund resolves any and all claims within the scope of the release set forth in Section VIII of the Settlement Agreement, up to and including the date of Final Approval. *Id.*, p. 7. The Settlement Fund represents only back wages (and certain related employer and employee tax withholdings as agreed to by the parties) and includes no liquidated damages, penalties, or other amounts which may have been recoverable under federal or state law in this case. *Id.*, pp. 4-5. The Settlement fund, less deduction for payments to class representatives, attorneys' fees and costs[3], the costs of administration of the Settlement, and a certain portion of employer's taxes (the "Net Settlement Amount"), will be distributed to each Class Member based upon a pro rata share (stated as a percentage). *Id.*, pp. 12-13.

The specific amount to be distributed to each class member was calculated as follows: based on the payroll data, the total number of weeks worked by each class member during the three-year statute of limitations period was calculated. Then using the average wage of each class member during this three-year period, and assuming a 30-minute unpaid meal period for each shift worked, the unpaid amount was calculated for each class member, and adding the unpaid amount for all the class members provided the total damages for the class (estimated to be $2,701,212.81). Dividing each class member's damage amount by the total damages for the class, provided a pro

---

[3] The total costs are in the amount of $107,482.00 (which include payments to named plaintiffs of $80,000.00; Settlement Administrator's costs of $14,682.00; and Plaintiffs' attorneys' costs of $12,800.00).

rata percentage of damages which were then used to calculate the pro rata share of the net settlement fund. The calculation treats class members equitably relative to each other because the funds will be distributed *pro rata* to class members based on weeks worked for the Defendants within the applicable statute of limitations. *See* Doc. No. 47-1 at 12-13.

Pursuant to Section VI. of the Settlement Agreement, the Net Settlement Amount for pro rata distribution to the class members is calculated by subtracting from the total settlement fund ($4,650,000.00), the following: (1) attorneys' fees ($1550000) and costs ($12800); (2) service award payment to the named plaintiffs ($80,000.00); settlement administration fees ($14,682.00), employee tax withholding ($945,136.32), and the employers tax withholding for Medicare, FUTA, and SUTA for all class members and the social security tax withholding for former employees only who are class members ($208,264.51).[4] The total Net Settlement Amount (before employee tax withholding) for pro rata distribution is $2,784,253.49. Thus, the Net Settlement Amount for distribution is approximately 103% of the total potential damages for the class.

Each Class Member will receive a share of the Net Settlement Amount proportionate to such person's estimated alleged damages as described in Section XII of the Settlement Agreement. *Id*. Additionally, for Class Members who are current employees of Battelle as of the date of Final Approval and are determined to be "eligible employees" under the terms of the Battelle Employees' Savings Plan (the "401(k) Plan") as of such date, employee 401(k) Plan contributions on such employee's pro rata share (as calculated in Section XII of the Settlement Agreement) will be made automatically from the Settlement Fund based on those employees' 401(k) Plan elections in place as of the date of Final Approval; and Battelle will make any required employer 401(k) Plan contributions, for such current and eligible employees of Battelle

---

[4] *See* Ex. 1, Declaration of Christina Fowler ("Fowler Decl."), at 4, ¶10.

5

as of the date of Final Approval only, outside of the Settlement Fund. *Id.* at 5.

The total average net recovery (after employee tax withholdings) for Class Members under the settlement is approximately $6,712.11 and the total highest net recovery is approximately $19,850.12. Ex. 1, ¶ 10.

**C.**     **Notice to the Settlement Class**

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, "[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

In this case, after Court granted the preliminary approval of settlement, the Settlement Administrator mailed the Notice to all 274 class members via First Class Mail. Ex. 1, ¶ 8. The Notice contains information regarding the nature of the lawsuit, the definition of the class, the

6

methodology for calculation of the pro rata share of each class member, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement. *Id*. at Ex. A thereto. A small number (13) of Notices were first returned undeliverable but the Settlement Administrator was able locate current addresses and re-deliver them successfully to all but one person. *Id.*, ¶ 9. The one Class Member to whom notice could not be delivered has been deceased since 2018. *Id*.

### III.    REQUEST FOR FINAL APPROVAL OF SETTLEMENT

In actions involving FLSA claims, such as the one here, "the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." *Morton v. Transcend Servs*., 2017 WL 977812, *1 (D. Colo. March 13, 2017) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Approval should be granted when: "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Id*. (*citing Lynn's Food Store*, 679 F.2d at 1354). As discussed below, and as the Court preliminarily determined (Doc. No. 48), all three elements are satisfied, and therefore the Court should approve the Settlement Agreement at the fairness hearing.

#### A.    A Bona Fide Dispute Exists Between the Parties

Parties "requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists." *Id*. (*citing Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. Apr. 19, 2010)). "To meet this obligation, the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the

7

employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Id*. (*citing Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 718 (E.D. La. July 9, 2008)).

In this case, Plaintiffs filed a complaint on behalf of themselves and other similarly situated non-exempt Battelle monitoring technicians at PCAPP asserting claims under the FLSA and Colorado law. During the relevant time period, Plaintiffs allege that Class Members were required to be actively on call during their meal periods, and often required to respond to calls and perform other work during their meal periods; they rarely, if ever, received an uninterrupted 30 minute meal break; and Defendant failed to pay regular non-overtime wages and overtime wages and other compensation to the Class Members for hours worked during their meal periods by automatically deducting 30 minutes of time for the meal periods each workday. [Doc. 1 at 7-9, ¶¶ 26-38.]. Battelle denies the allegations in the Complaint and disputes that all Class Members were denied an uninterrupted 30-minute meal break for every shift work during the relevant statutory time periods at issue. In particular, Battelle notes that the fact that Plaintiffs were required to carry personal protective gear or could have been required to occasionally respond to alarms, does not mean they were not fully relieved from duty or denied a bona fide meal period under the FLSA. *See* 29 C.F.R. § 785.19. Additionally, Battelle disputes that Plaintiffs were interrupted during all or most meal periods as claimed. Battelle also notes that the Plaintiffs' failure to report the claimed unpaid hours associated with each meal period in the company's timecard system could be fatal to their claims. *Brown v. ScriptPro,* LLC, 700 F.3d 1222, 1230–31 (10th Cir. 2012) (although there was no dispute employee worked overtime hours, employee failed to keep any record of the hours

worked, and because he could have recorded the time in the timekeeping system, the court refused to award him any overtime).

The Court should therefore grant this Joint Motion because bona fide legal and factual disputes exist, and settlement will fairly resolve these disputes without having to engage in costly litigation.

B.       **The Settlement Agreement Is Fair and Reasonable**

An FLSA settlement must be fair and reasonable. *Morton*, 2017 WL 977812, at *2. A settlement is fair and reasonable if it provides "adequate compensation to the employees and [does] not frustrate the FLSA policy rationales." *Id*. When evaluating whether a settlement agreement meets this standard, the Tenth Circuit considers the following factors: "(1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id*. (*citing Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). All of these factors weigh in favor of approving the Settlement Agreement.

*First*, the Parties fairly and honestly negotiated the Settlement Agreement. The Parties each were represented by experienced counsel in the negotiations. The Parties exchanged initial disclosures, engaged in a first round of written discovery, and discussed damages calculations for a period of several months before the mediation on October 27, 2020. The Parties also relied on accurate timekeeping and payroll information provided by Battelle to inform their discussions as to a fair and reasonable amount for Class Members' alleged damages. Experienced counsel on both sides agree that the settlement is fair and reasonable and in the best interests of their clients.

*Second*, questions of law and fact exist which place the ultimate outcome of the litigation in doubt.  Plaintiffs contend that Battelle did not provide a meal period that is "uninterrupted and duty free" under the CMWO and the case law interpreting that provision (as well as the FLSA) because employees were required to respond to work-related demands during those periods.  Colo. Minimum Wage Order No. 35, 7 Code Colo. Regs. 1103-1(7); *HCA-HealthONE LLC v. Colo. Dep't of Labor & d Emp't*, 2020 Colo. App. LEXIS 658 at *1–2 (Colo. App. 2020).   Battelle contends that the facts would show otherwise, and that Plaintiffs were required by company policy to either restart their 30-minute meal periods if interrupted or be paid an addition 30 minutes for any interrupted meal breaks. The Parties thus seriously dispute what it means to be "uninterrupted and duty free" and whether the facts in any event would show that Battelle violated state or federal law.

*Third*, the value of immediate recovery outweighs the mere possibility of future relief after protracted litigation.  Substantial discovery remains to be taken in this case, including days of depositions of representative plaintiffs who would be forced to take leaves of absence and miss scheduled work shifts to appear.  Dispositive motions would likely follow, and the Parties may still have to engage in expert discovery and miscellaneous motions practice.  The Parties then face the prospect of a 10-day jury trial and the time and energy such undertaking entails.  Doc. 28.  The Settlement Agreement compensates Class Members without delay based on their pro rata share of the Net Settlement Amount based on the calculation methodology agreed on by the Parties.  Doc. 47-1 at pp.11-12.  Class Members who do not opt out of the settlement will almost certainly receive at least 100% of back wages that could have been recoverable after trial in this matter because the Net Settlement Amount is greater than such amount even under a liberal calculation of the total estimated recovery in this case. *See* Doc 47-2, ¶ 27.  Plaintiffs are non-exempt hourly workers who

would likely value the promptest possible receipt of back wages and would want to avoid having to spend valuable time on further litigation.

*Fourth*, the Parties agree that the Settlement Agreement is fair and reasonable. Plaintiffs' counsel has litigated numerous FLSA collective actions and state law wage and hour class actions in Colorado and around the country. *Id*., ¶ 4. In many of those cases, Plaintiffs' counsel has negotiated settlements on both an individual and a class-wide basis and is experienced in addressing the issues that arise in complex litigation and settlements. Thus, Plaintiffs' counsels' experience representing parties in FLSA collective actions and Rule 23 class actions is substantial.

In sum, because the Settlement Agreement is the product of fair and honest arm's-length negotiations by experienced counsel and provides substantial relief to Plaintiffs and Class Members and eliminates the inherent risks both sides would bear if this complex and deeply contested litigation continued to resolution, the Court should approve the Settlement Agreement. *See Albu v. Delta Mech. Inc*., 2015 U.S. Dist. LEXIS 95485, at *9 (D. Colo. June 30, 2015) (*citing Lynn's Food Stores, Inc.*, 679 F.2d at 1354) (noting that settlement agreements negotiated at arm's-length by experienced counsel are entitled to "a presumption of fairness"). By approving the Settlement Agreement, this Court would further the FLSA's policy rationale by allowing the Parties to resolve their claims fairly and reasonably.

C.   **The Proposed Enhancement Award Is Reasonable**

Named Plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pliego*, 313 F.R.D. at 131 (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases."). The reasonableness of a service award to a named

plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable" in similar cases). Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pliego*, 313 F.R.D. at 131. Courts in this Circuit have also considered whether the named plaintiff in an FLSA collective action agreed to grant a defendant employer a broader general release in addition to releasing their FLSA claims in assessing the reasonableness of an incentive award. *See, e.g.*, *Gundrum v. Cleveland Integrity Servs., Inc.*, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs "substantially higher" than normal service awards of $20,000 each where they agreed to a general release).   Importantly, Courts in this District (including this Court) have found similar incentive awards reasonable in other FLSA/employment cases. *See, e.g.*, *id.*; *Aragon v. Clear Water Products, LLC*, 2018 WL 6620724, at *8 (D. Colo. Dec. 18, 2018) (approving $7,000 incentive award to named plaintiff in FLSA class and collective action); *Shaulis v. Falcon Subsidiary, LLC*, 2018 WL 4620388, at *1 (D. Colo. Sept. 26, 2018) (approving incentive awards of $7,500 to both named plaintiffs in FLSA class and collective action); *Pliego*, 313 F.R.D. at 131; *Shaw v. Interthinx, Inc.*, 2015 WL 1867861 at *8–9 (D. Colo. Apr. 21, 2015) (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc*., 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010) (approving $10,000 service award to named plaintiff).

The proposed enhancement award to the three named Plaintiffs of $80,000 is reasonable and Battelle, by this Motion, consents to paying the same as part of the Settlement Agreement. It is intended to recognize named Plaintiffs' initiative and efforts in this lawsuit and on behalf of the putative Class Members. The named Plaintiffs took a substantial risk in bringing forth claims relating to Battelle's alleged violations and representing the Class Members when no other employees were willing to do so. Moreover, the named Plaintiffs expended significant effort and time in educating their counsel regarding their work and job experiences, and Battelle's policies and procedures, as well as in assisting in the litigation by reviewing and evaluating the arguments put forth by Battelle, including reviewing and answering formal written discovery and participating in settlement discussions and the settlement approval process.

Accordingly, the proposed incentive award agreed to by the Parties is reasonable to compensate the named Plaintiffs.

**D.     The Requested Attorneys' Fees and Costs Are Reasonable**

To approve the Settlement Agreement, this Court must be satisfied that the award of attorneys' fees and costs is reasonable. *Morton*, 2017 WL 977812, at *2. The Settlement Agreement provides Plaintiffs' counsel with attorneys' fees - amounting to 33% of the Settlement Fund plus costs.  If approved, Battelle does not oppose this award of attorneys' fees and costs.

The FLSA provides "[t]he court … shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 28 U.S.C. § 216(b). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *Ali v. Jerusalem Restaurant, Inc.*, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015).

13

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *See Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 484 (10th Cir.1998); *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993); *Lucken Family Ltd. Partnership*, 2010 WL 5387559 at *2. In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry,* 43 F.3d 474, 482–83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010), *vacated in part on other grounds*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in class actions, some courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974), which are historically applied in performing a lodestar analysis, and consist of: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee Case is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and

ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id*.

The requested attorneys' fees of 33 1/3% of the common fund is reasonable under the percentage of the common fund method, as it is consistent with the rule followed by District Courts in the Tenth Circuit. *See e.g., Shaulis v. Falcon Subsidiary LLC*, Civil Action No. 18-cv-00293-CMA-NYW, at *4-6 (D. Colo. Sep. 26, 2018) (citing *Thompson v. Qwest Corporation*, 2018 WL 2183988, at *1 (D. Col. May 11, 2018) (33.3% of gross settlement awarded for attorney's fees); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (39% of the fund awarded as fees); *Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc.*, Civil Action No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Technology Corp.*, Case No. 95-B-2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%- 50% range and is presumptively reasonable."))

Considering the circumstances presented herein, Plaintiffs' counsel's requested attorney fees and litigation expenses are imminently reasonable as both a percentage of the total common settlement fund and under the *Johnson* factors.

### E. **Fairness Hearing**

Furthermore, pursuant to Fed. R. Civ. P. 23(e)(2), a Court may approve a class action

settlement only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

### 1. Adequate Representation.

Class Counsel are experienced in wage and hour related litigation and have litigated several class action lawsuits in several states. Class Counsel vigorously litigated the case since its inceptions and are well versed in the law and facts underpinning the claims of the proposed class and collective. Class Counsel have each spent significant amount of time investigating and prosecuting the claims in this case. Moreover, Class Counsel have significant experience in wage-and-hour class actions like this one. *See generally* Doc. 47-2 (Dec. of Attorney Sharon Preston).

### 2. The Relief Provided Is Adequate.

In arriving at the Settlement, Plaintiffs have considered all material factors, including the "costs, risks, and delay of trial and appeal," as well as the ability to collect on a significant judgment. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The proposed Settlement strikes an appropriate balance between the strength of the Plaintiffs' case and the benefit to the class of securing a settlement now, rather than after contentious and intense litigation, lengthy trial, and inevitable appeals process.

Additionally, $4,650,000.00 is a significant recovery for Plaintiffs and the Class. In order

to be assured of the fairness of the settlement amount, Class Counsel asked Defendants for, and Defendants provided, employment data for every member of the classes for the entire class period. Based on the payroll data, the Class Counsel calculated the total number of weeks worked by each class member during the three-year statute of limitations period. Then using the average wage of each class member during this three-year period, and assuming a 30-minute unpaid meal period for each shift worked, the unpaid amount was calculated for each class member, and adding the unpaid amount for all the class members provided the total damages. The total damages were, as described, were estimated to be $2,701,212.81.  The settlement amount is significantly more than the estimated damages and is about 170 percent of the estimated damages. Furthermore, even the Net Settlement Fund (i.e., total settlement amount minus the attorneys' fees and costs, the class administration costs, and service awards to named plaintiffs) is still estimated to slightly over 100% of the damages. Thus, given the risks and costs of proceeding, the $4,650,000.00 settlement amount is a fair and adequate compromise for the Class.

### 3. The Settlement Is Equitable Among Class Members.

Pursuant to Rule 23(e)(2)(D), the proposal treats class members equitably relative to each other because the funds will be distributed *pro rata* to class members based on weeks worked for the Defendants within the applicable statute of limitations. *See* Doc. 47-1 at pp. 12-13. There are therefore "no grounds to doubt [the Settlement's] fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys) . . .." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 33 (E.D.N.Y. 2006).

### F.      FLSA Final Certification and Approval

"When parties settle FLSA claims before the Court has made a final certification ruling,

the court must make some final class certification finding before it can approve a collective action settlement." *Tommey v. Computer Sciences Corp.*, No. 11-cv-2214, 2015 WL 1623025, at *1 (D. Kan. April 13, 2015). "Final certification for settlement purposes requires the Court to determine whether the settlement class members are similarly situated." *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1171 (D. Colo. 2018). For settlement purposes only, the Parties agree that the FLSA class is similarly situated for the same reasons the Court preliminarily certified the FLSA class, *i.e.*, because the alleged policies would have affected each class member equally during each workweek worked. *See* Doc. 48 (preliminarily approving settlement and certifying the FLSA class). The Court should finally certify the FLSA class at the fairness hearing for the reasons set forth in the parties' motion for preliminary approval. *See* Doc. 47.

## III.    CONCLUSION

For the reasons set forth in detail herein, the Court should certify the Parties' proposed settlement class for purposes of settlement only and finally approve the Parties' agreed-upon Settlement Agreement.

Respectfully Submitted:

*s/Sharon Preston*
Sharon Preston
PRESTON & BRAR, LLC
670 East 3900 South, Suite 101
Salt Lake City, Utah 84107
Phone: (801) 269-9541
Fax: (801) 269-9581
Email: sharon@prestonbrar.com
**ATTORNEY FOR PLAINTIFFS**

*s/Mark B. Wiletsky*
Mark B. Wiletsky
HOLLAND & HART LLP
1800 Broadway, Ste. 300
Boulder, CO 80302
Phone: 303-473-2864
Fax: 303-975-5292
MBWiletsky@hollandhart.com

and

*s/Jeremy B. Merkelson*
Jeremy B. Merkelson
HOLLAND & HART LLP
901 K Street NW, Suite 850
Washington, DC 20004

18

        Phone: 202-654-6919
        Fax: 303-975-5292
        JBMerkelson@hollandhart.com

        **ATTORNEYS FOR DEFFENDANT**

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2021, I have caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

*s/Mark B. Wiletsky*
Mark B. Wiletsky
HOLLAND & HART LLP
1800 Broadway, Ste. 300
Boulder, CO 80302
Phone: 303-473-2864
Fax: 303-975-5292
MBWiletsky@hollandhart.com

and

*s/Jeremy B. Merkelson*
Jeremy B. Merkelson
HOLLAND & HART LLP
901 K Street NW, Suite 850
Washington, DC 20004
Phone: 202-654-6919
Fax: 303-975-5292
JBMerkelson@hollandhart.com

**ATTORNEYS FOR DEFFENDANT**

/s/Sharon Preston
Sharon Preston
Attorney for Plaintiffs

20