# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## JUDGE R. BROOKE JACKSON

Civil Action No. 1:18-cv-03179-RBJ

JASON ROTHE,
CARLOS MARTINEZ AND
ANDREW BRYANT, Individually and
On Behalf of Others Similarly Situated,

Plaintiffs,

vs.

BATTELLE MEMORIAL INSTITUTE,

Defendant.

---

## ORDER ON JOINT MOTION FOR FINAL CERTIFICATION OF CLASS AND COLLECTIVE ACTION AND FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND PLANTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS TO NAMED PLAINTIFFS

---

This matter comes before the Court on the Plaintiffs' and Defendant's ("the Parties")

Joint Motion for Final Certification of Class and Collective Action and for Final Approval of

Settlement Agreement and Plaintiff's Unopposed Motion for Approval of Attorney's Fees,

Costs, and Service Awards to Named Plaintiffs. See Doc. Nos. 62 and 63, respectively.[1]  The

Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.

On January 11, 2021, the Court preliminarily approved the Settlement Agreement and

certified the proposed collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201, et seq., and proposed class action under Fed. R. Civ. P. 23 for settlement purposes and

---

[1] "Doc. __" refers to the filing number of a document on the Case Management/Electronic Case Filing system for this civil action.

approved the form of class notice to be sent to the class/collective by the settlement administrator. Doc. 48 (minute order).

On April 13, 2021, notice was sent to all Class Members[2] by the means approved by the Court by the settlement administrator, Simpluris, Inc. ("Settlement Administrator"), with the approved opt-out form. *See* Ex. 1, Declaration of Christina Fowler ("Fowler Decl."), ¶¶ 1-8. Since then, no opt-out forms were returned, and no objections made by any Class Member. *Id*., ¶¶ 11-13, and Ex. B thereto.

## I.     BACKGROUND

Plaintiffs Jason Rothe, Carlos Martinez, and Andrew Bryant, on behalf of themselves and other similarly situated employees of Battelle, filed a Complaint in this Court alleging that Battelle violated the FLSA and Colorado wage and hour laws, specifically the Colorado Wage Claim Act ("CWCA"), COLO. REV. STAT. §§ 8-4-2, *et seq*., and the Colorado Minimum Wage Order No. 34 ("CMWO"), 7 C.C.R. § 1103-1 CWCA. *See* Doc. 1. The Complaint alleges that Plaintiffs and other similarly situated employees of Battelle at the Pueblo Chemical Depot, Chemical Agent-Destruction Pilot Plant ("PCAPP") in Pueblo, Colorado were not paid for work performed during 30-minute meal breaks, resulting in unpaid regular and overtime wages under state and federal law. *Id*. Specifically, Plaintiffs claim they were routinely interrupted during meal periods by co-workers, managers, alarms, PA announcements, and radio calls, resulting in them being "actively on call" and/or performing work during their meal periods. *Id*. ¶ 38. A total of 67 current and former employees opted into the FLSA collective action. *See* Docs. 1, 8, 30.

On February 12, 2019, Battelle answered the Complaint, denying the allegations. *See* Doc. 21.

---

[2] Notice was ultimately undeliverable to one of the 274 Class Members. Ex. 1, ¶ 9. That person is deceased. *Id*.

Plaintiffs investigated the alleged violations during discovery and responded to the discovery requests from the Defendant.  In addition to reviewing various documents from the Defendant and payroll records of numerous opt-in plaintiffs, Plaintiffs' counsel conducted interviews of numerous employees, including approximately 30 video-recorded interviews of the class members. *See* Doc. 47-2, ¶¶ 14-16.

The Parties, represented by experienced counsel on both sides, reached an agreement in principle to settle this case following a full day mediation on October 27, 2020, with a third-party mediator jointly selected by the Parties. *Id.*, ¶ 11. Following the mediation, the Parties negotiated the specific written terms of the Settlement Agreement and resolved other remaining issues in the litigation. *Id.*, ¶¶ 12. The terms of the settlement reflect several months of arms-length negotiations between the Parties dating back prior to the mediation and contain a fair and reasonable settlement of the claims in this case.

On January 8, 2021, the parties filed a joint motion for preliminary approval of a class action settlement.  *See* Doc. No. 47.  The Court granted the motion on January 11, 2021 and approved the parties' plan to disseminate notice of the settlement to class members.  On June 10, 2021, the parties moved for final approval of the class action settlement.  *See* Doc. No. 62.  The Court held a final fairness hearing regarding the proposed settlement on June 24, 2021.

## II.     SUMMARY OF THE SETTLEMENT TERMS

### A.     Settlement Background and Procedure

The fully executed Settlement Agreement (Doc. 47-1), provides that, for purposes of settlement only, the Parties agreed to certify the proposed class and collective action as defined in Paragraph 46.a-b of the Complaint (Doc. 1 at pp. 10-11).  The Court preliminarily certified the class and collective action and granted preliminary approval of the Settlement Agreement on

January 11. 2021.  *See* Doc. 48.

The Parties' Settlement Agreement is a hybrid agreement, resolving both the FLSA and

Colorado state law claims. The settlement agreement defines the settlement class as:

> <u>FLSA Class</u>: All persons who are, or have been, employed by defendant Battelle,
> as Monitoring Technicians, Demil Technicians, or other similarly situated hourly-
> paid non-management employees, within the applicable statutory period (from
> 12/12/2015 to date of final approval of settlement), who were required to be
> actively on-call and frequently perform work for Battelle's benefit during their
> meal periods, but were not compensated for these meal periods, and who were not
> paid overtime pay for this work for hours worked over 40 hours

> <u>Rule 23 Class</u>: All persons who are, or have been, employed by defendant Battelle
> in the State of Colorado, as Monitoring Technicians, Demil Technicians, or other
> similarly situated hourly-paid non-management employees, within the applicable
> statutory period (from 12/12/2015 to date of final approval of settlement), and
> who were required to be actively on-call and frequently perform work for
> Battelle's benefit during their meal periods, but were not compensated for these
> meal periods.

Doc. No. 1 at 10-11, ¶¶ 46.a-46. b.

**B.      Settlement Terms and Methodology for Distribution**

The total amount to be paid by Battelle in settlement of this action is $4,650,000.00 (the

"Settlement Fund").  Doc. 47-1, p. 4. The Settlement Fund resolves any and all claims within the

scope of the release set forth in Section VIII of the Settlement Agreement, up to and including

the date of Final Approval.  *Id*., p. 7.  The Settlement Fund represents only back wages (and

certain related employer and employee tax withholdings as agreed to by the parties) and includes

no liquidated damages, penalties, or other amounts which may have been recoverable under

federal or state law in this case. *Id*., pp. 4-5.  The Settlement fund, less deduction for payments to

class representatives, attorneys' fees and costs[3], the costs of administration of the Settlement, and

a certain portion of employer's taxes (the "Net Settlement Amount"), will be distributed to each

_____

[3] The total costs are in the amount of $107,482.00 (which include payments to named plaintiffs of $80,000.00;
Settlement Administrator's costs of $14,682.00; and Plaintiffs' attorneys' costs of $12,800.00).

Class Member based upon a pro rata share (stated as a percentage). *Id*., pp. 12-13.

The specific amount to be distributed to each class member was calculated as follows: based on the payroll data, the total number of weeks worked by each class member during the three-year statute of limitations period was calculated. Then using the average wage of each class member during this three-year period, and assuming a 30-minute unpaid meal period for each shift worked, the unpaid amount was calculated for each class member, and adding the unpaid amount for all the class members provided the total damages for the class. Dividing each class members damage amount by the total damages for the class, provided a pro rata percentage of damages which were then used to calculate the pro rata share of the net settlement fund. The calculation treats class members equitably relative to each other because the funds will be distributed *pro rata* to class members based on weeks worked for the Defendants within the applicable statute of limitations. *See* Doc. No. 47-1 at 12-13.

Pursuant to Section VI. of the Settlement Agreement, the Net Settlement Amount for pro rata distribution to the class members is calculated by subtracting from the total settlement fund ($4,650,000.00), the following: (1) attorneys' fees ($1550000) and costs ($12800); (2) service award payment to the named plaintiffs ($80,000.00); settlement administration fees ($14,682.00), employee tax withholding ($945,136.32), and the employers tax withholding for Medicare, FUTA, and SUTA for all class members and the social security tax withholding for former employees only who are class members ($208,264.51).[4]

Additionally, Battelle agreed that: (1) for Class Members who are current employees of Battelle as of the date of Final Approval and are determined to be "eligible employees" under the terms of the Battelle Employees' Savings Plan (the "401(k) Plan") as of such date, employee 401(k) Plan contributions on such employee's pro rata share will be made automatically from the

---

[4] *See* Doc. 62-1, Ex. 1, Declaration of Christina Fowler ("Fowler Decl."), at 4, ¶10.

Settlement Fund based on those employees' 401(k) Plan elections in place as of the date of Final Approval; and (2) Battelle will make any required matching employer 401(k) Plan contributions, for such current and eligible employees of Battelle as of the date of Final Approval only, outside of the Settlement Fund. *See* Doc. No. 47-1 at 5.

### A. <u>Notice to the Settlement Class</u>

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id.* Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, "[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

The Court finds that the parties complied with the notice plan that was approved by this Court in its ruling on the parties' motion for preliminary approval of the class action settlement.

*See* Doc. No. 47. The settlement administrator mailed the notice to all 274 class members. Several class members provided Plaintiffs' counsel with their new addresses, which were provided to the Settlement Administrator, and the Settlement Administrator remailed the notices to those class members at their new addresses. A small number (13) of notices were returned undeliverable, but after locating their current addresses, the notices were remailed to them. Thus, the notice was delivered to all the class members. Notice was also emailed to many of the class members for whom an email address was available. Notice to one class member could not be delivered because the class member has passed away. *See* Doc. 62-1, Declaration of Christina Fowler ("Fowler Decl."), at 3, ¶ 9.

Consistent with its prior order, the Court finds that the parties made reasonable efforts to identify and provide notice to all class members who would be bound by the settlement. *See* Fed. R. Civ. P. 23(e)(1) (requiring court to "direct notice in a reasonable member to all class members who would be bound by the proposal"); *Tennille v. W. Union Co.*, 785 F.3d 422, 438-39 (10th Cir. 2015) (finding that mailing of settlement notice to addresses updated through post office's change-of-address database was sufficient under Rule 23 and due process*)*; *DeJulius*, 429 F.3d at 944 (noting that due process inquiry "focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort" (internal quotation marks omitted)).

Moreover, the notice itself contained information regarding the nature of the lawsuit, the definition of the class, the methodology for calculation of the pro rata share of each class member, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement. *See* Doc. 62-1, Declaration of Christina Fowler ("Fowler Decl."), Ex. A; *see also* Fed. R. Civ. P. 23(c)(2)(B)

(describing information to be included in notice). The notice also directed class members to a toll-free number for additional information regarding the settlement. *See* Doc. 62-1, Declaration of Christina Fowler ("Fowler Decl."), Ex. A; *see also Tennille*, 785 F.3d at 437 (finding that "notice satisfied due process by informing class members of several ways they could obtain information about the claims that they would be releasing if they joined the settlement").

Based on the foregoing, the Court is satisfied that the notice provided to class members met the requirements of Rule 23(e) and Due Process.

## III.    DISCUSSION

### A.    Analysis of Rule 23 Factors

In deciding whether to approve a settlement in class action, a court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors:

(1) whether the proposed settlement was fairly and honestly negotiated;

(2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) the judgment of the parties that the settlement is fair and reasonable."

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable. The Court may also consider the fact that no objections were filed by any class members. *In re Dun & Bradstreet Credit Servs. Customer Litig.,* 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("No timely objection was raised by any Class Member to the proposed settlement,

and less than 5% of all Class Members have chosen to opt out. The Court gives these factors substantial weight in approving the proposed settlement.").

1. **The Proposed Settlement Was Fairly and Honestly Negotiated**

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997) (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D.Colo. 1989)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. The Parties engaged in formal discovery regarding the merits of the claims and Defendants' defenses, including written discovery. Additionally, Plaintiffs' counsel conducted intensive informal discovery, including reviewing policy and other documents, payroll records, and interviewing numerous of Defendant's current and former employees, and conducting numerous recorded interviews of class members.

Through this process, each party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel intensely and rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after

significant discovery").

## 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of This Action In Doubt

To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Plaintiffs believe that their claims are strong but recognize that success is not guaranteed. With respect to the merits of Plaintiffs' claims, Plaintiffs strongly believe that they would prevail in demonstrating that the monitoring technicians and other similarly situated employees had their meal breaks significantly interrupted with work-related matters and thus were owed overtime under the FLSA and Colorado law. Defendants, however, contend that the employees were given meal unpaid breaks that were not interrupted in a manner that would convert the meal breaks to paid work time. Also, in contrast to Plaintiffs' position, Defendant is confident that Plaintiffs would not ultimately prevail in showing that the employees' meal breaks would qualify as work time under the FLSA and the Colorado law. In particular, Battelle notes that the fact that Plaintiffs were required to carry personal protective gear or could have been required to occasionally respond to alarms, does not mean they were not fully relieved from duty or denied a bona fide meal period under the FLSA. *See* 29 C.F.R. § 785.19. Additionally, Battelle disputes that Plaintiffs were interrupted during all or most meal periods as claimed. Battelle also notes that the Plaintiffs' failure to report the claimed unpaid hours associated with each meal period in the company's timecard system could be fatal to their claims. *Brown v. ScriptPro,* LLC, 700 F.3d 1222, 1230–31 (10th Cir. 2012) (although there was no dispute employee worked overtime hours, employee failed to keep any record of the hours worked, and because he could have recorded the time in the timekeeping system, the court refused to award

him any overtime).   Defendant is also confident that Plaintiff would fail in certifying the class because individualized inquiries would be necessary to determine whether each monitoring technician's meal breaks were interrupted by work, and the nature and extent of those interruptions would render class treatment inappropriate under the FLSA and Colorado law. Nonetheless, while Defendant believes that its defenses are strong, they recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Second, even if the meal periods were interrupted, there is factual dispute as to the percentage of workweeks to which those interruptions would apply. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3.      The Value of Immediate Recovery Outweighs the Possibility of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties will engage in

additional discovery, including depositions of the Defendant, Plaintiffs, and numerous opt-in Plaintiffs. The parties would also have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Class Certification and Approval of *Hoffman-Laroche* Notice, as well as Defendants' Motion to Decertify the Class, if the Court does certify a class, and Motions for Summary Judgment. The trial would include testimony by representatives of the Defendant corporate entity, Class Members, and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members or a significantly lower recovery than the current settlement. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved. *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial . . .. Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

**4.      Counsel Believe the Settlement Is Fair and Reasonable**

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability

class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

5.     **No Opt-Outs or Objections**

The Settlement Administrator has not received any opt-out forms, and no class member has opted out of the settlement. Additionally, no objections to the settlement have been filed. *See* Doc. 62-1, Declaration of Christina Fowler ("Fowler Decl.") at 5, ¶ 11.

Having thoroughly reviewed the Joint Motion and the Settlement Agreement, the Court finds that the Settlement Agreement negotiated by counsel is fair, reasonable, and adequate. With regard to the four factors, the parties have demonstrated that the Settlement Agreement was negotiated at arms' length by counsel experienced in these types of cases. The parties have also shown that serious questions of fact and law exist, particularly with regard to the question about whether plaintiffs' meal breaks are compensable work. The Settlement Agreement ensures the class members will receive reasonable compensation in light of the uncertainties of litigating to a judgment. Further, the Court finds that the value of the Settlement Agreement outweighs the possibility of recovery after protracted litigation. For example, the court in *Ehrheart v. Verizon Wireless*, explained: The presumption in favor of voluntary settlement agreements

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

609 F.3d 590, 595 (3d Cir. 2010); *accord Hodge v. Signia Marketing, Ltd.*, 2017 WL 5900344 (D. Colo. Nov. 30, 2017). This settlement fully compensates the Rule 23 class and FLSA collective action members and allows for $2,784,253.49 to be distributed to the class members. See Doc. 62 at 5. The total damages calculated for the class members is estimated to be $2,701,212.81. *Id.* Thus, the parties estimate the distribution amount to be approximately 103% of the total potential damages that the class suffered (assuming no penalties). *Id*. The Settlement Agreement provides a significant and immediate benefit to the class. Finally, both parties have represented their view that the Settlement Agreement is fair and reasonable. The fact that no class member objects shows that the class also considers this settlement fair and reasonable. *See In re Dun & Bradstreet*, 130 F.R.D. at 372. As set forth above, the Court finds that each of the factors weights in favor of finding that the Settlement Agreement is fair, reasonable, and adequate. Accordingly, the Court fully and finally approves the Settlement Agreement and grants the Joint Motion (Doc. No. 62).

## IV.    ATTORNEY'S FEE AWARD

Class counsel request an award of attorney's fees of 33% of the total settlement amount, which is $1,550,000.00. *See* Doc. No. 63 at 2. The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." *Gray v. Phillips Petroleum Co.*, 971

F.2d 591, 594 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal citation omitted).

In class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund. *See Gottlieb v. Bany,* 43 F.3d 474, 482 (10th Cir. 1994). Courts generally award attorneys' fees in common fund cases "based on a percentage of the common fund obtained for the benefit the class," thereby "proportionately spreading payment of attorney fees among the class members." *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, *2-3 (D. Colo. Dec. 22, 2010). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel was retained on a contingent fee basis, as in this case." *Id.* (quotations omitted); *see also Anderson v. Merit,* 2009 WL 3378526 at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created."). *See also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because plaintiffs' fee request is for a percentage of the common fund, the Court will evaluate the attorney's fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)).  In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 454-55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974); *see also Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455-56 (10th Cir. 1988) ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor.  *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).  The Court finds that the factors relevant in this case weigh in favor of approving the requested fee award. *See Brown*, 838 F.2d at 455-56 ("[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation.").

Significantly, the Settlement Agreement will allow 100% recovery of damages for the FLSA and Rule 23 class members, while avoiding litigation risks that could threaten recovery. This is a good result for the Class and weighs very heavily in favor of approving the amount of fees requested. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) (noting that "the amount of the recovery, and end result achieved are of primary importance" when

considering what constitutes a reasonable attorney fee).

Additionally, the Class counsel request the costs expended in the litigation in the amount of $12,800, and the cost of Settlement Administration of $14,682.00.

## 1. Time and Labor Required

Class counsel represents that they have spent two-and-half years and over 852 hours litigating this case and anticipates spending more time as the settlement fund is distributed. *See* Doc. No. 63-1 at 4-5, ¶¶15-18. As part of the litigation, counsel for Plaintiffs investigated the case prior to and after filing the complaint, including interviewing numerous employees and reviewing voluminous documents and compiling databases of employment and payroll data. During discovery, Plaintiffs interviewed dozens of employees, further reviewed documents, and responded to extensive discovery requests. Class Counsel has spent significant amount of time preparing opt-in plaintiffs' affidavits, and documents for class certification; and interviewed dozens of class members. Again, to prepare for mediation, counsel for Plaintiffs prepared video presentations of numerous employees, prepared declarations, and otherwise did extensive preparation for mediation. *See* Doc. No. 63-1 at 4, ¶ 14. Class counsel represents that they have spent two-and-half years and over 852 hours litigating this case and anticipates spending more time as the settlement fund is distributed. *See* Doc. No. 63-1 at 4-5, ¶¶15-18. Given the substantial amount of time and labor invested in this case by class counsel, the Court finds that the time and labor factor weighs in favor of Plaintiffs' requested fee award.

## 2. Novelty and Difficulty of the Questions Presented

Class counsel represents that the case involved two fundamental issues: whether the monitoring technicians and other similar employees were provided meal breaks free of interruptions and/or whether the meal breaks were used predominantly for the benefit of the

employer, and most importantly, whether these questions could be resolved on a class or collective action basis. Analysis of these questions and effective prosecution of the claims required not only extensive knowledge of applicable case law, statutes, and regulations, but also insight on successfully litigating cases under both Fed. R. Civ. P. 23 and the FLSA. In evaluating the risks of proceeding to trial and in negotiating a settlement, class counsel had to navigate difficult issues related to both the FLSA and Fed. R. Civ. P. 23. *Id.* This factor therefore weighs in favor of the requested award. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) (noting that, although the area of law was not novel, the difficulty and complexity of the issues in the case supported a "generous award of attorney fees").

### 3.      Skill Required and Experience of Plaintiffs' Counsel

The wage and hour issues in this litigation are governed by highly technical state and federal wage statutes and regulations, including the FLSA, Colorado Wage Act and Wage Order. The Court will consider the third and ninth *Johnson* factors together. *See, e.g.*, *id.* (noting that the second, third, and ninth *Johnson* factors are closely related). As evidenced by her declaration, class counsel has extensive experience representing plaintiffs in wage and hour class action cases. *See generally* Doc. No. 63-1 at 2, ¶ 14. Accordingly, class counsel was well equipped to address the unique challenges and anticipated defenses posed to plaintiffs' ability to recover in this case. Class counsel successfully negotiated a settlement that provides meaningful recovery for the plaintiff class. The "skill" and "experience" factors therefore weigh in favor of the requested fee award.

### 4.      Preclusion of Other Employment

"Attorneys attempting to handle a large class [in FLSA cases] are precluded by the

ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case." *Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013). Class counsel represents that he spent significant hours on this case on a contingent fee basis and was required to forego other work to undertake this case. *See* Doc. No. 63-1-2 at 2, ¶ 5. The Court finds that, while this case does not involve a large class, the handling of this case precluded other work, and therefore the fourth factor weighs in favor of the requested fee award.

### 5. The Customary Fee/Awards in Similar Cases

The Court considers factors five and twelve together. Courts in this district have recognized that "[t]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009); see also *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable"); *Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007) (collecting cases approving percentage fees ranging from 24% to 36% of the common fund).

Plaintiffs in this case seek $1,550,000.00 or 33% of the total settlement amount in attorney's fees and $12,800 in costs. [5] This is well within the percentage range approved in similar cases. *See e.g., Whittington*, 2013 WL 6022972, *6 ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Cimarron Pipeline Construction, Inc.*, 1993 WL 355466, *2 (noting that "[f]ees in the range of 30- 40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent

with prevailing case law of this circuit"); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472 (awarding $1.617 million in attorneys' fees in $4.9 million common fund settlement of overtime claims); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580,*9-10 (S.D.N.Y. Aug. 23, 2010) (awarding fees equal to 33% of $800,000 settlement); *Braun v. Wal-Mart, Inc.,* 2009 WL 1592532 (Minn. Dist. Ct. June 1, 2009) (38% fee award in a $54 million settlement); *Capsolas v. Pasta Res. Inc*., 2012 WL 4760910, at*8 (awarding fees equal to 33.33% of the $5.25 million common settlement); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp.2d 337, 339-40 (S.D.N.Y. 2012) (awarding fees equal to 33.33% of the $850,000 common fund settlement). The Court finds this amount to be in line with the customary fees and awards in similar cases. The fifth and twelfth *Johnson* factors therefore weigh in favor of approval.

### 6. <u>Fixed or Contingent Nature of the Fee</u>

Class counsel undertook the representation on a contingency basis. *See* Doc. No. 63-1 at 2, ¶ 5. Courts have recognized the importance of such arrangements, noting that many workers "cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990). Thus, "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case." *In re Abrams*, 605 F.3d 238, 245-46 (4th Cir. 2010). "Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Id*. Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *Farley v. Family Dollar*

*Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).[5] In this case, Class Counsel would not have recovered *any* of their fees and out- of-pocket costs had they not obtained a settlement or prevailed at trial. This factor thus weighs in favor of the requested fees because Class Counsel assumed significant risk of nonpayment when they agreed to represent Named Plaintiffs on a contingency fee basis. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. at 1151 ("A contingent fee . . . is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.").

**7.      Time Limitations Imposed by the Client or the Circumstances.**

The *Johnson court* held that priority work delaying a lawyer's other work is entitled to a premium.  This case imposed time limitations and minor delays as class action cases usually do on other cases. Accordingly, this factor weighs in favor of the requested fee award.

**8.      Amount Involved and the Results Obtained**

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks

---

[5] While courts have consistently interpreted this factor as an inquiry into the fixed or contingent nature of the fee arrangement, the Supreme Court has indicated that "a careful reading of *Johnson* shows that the contingency factor was meant to focus judicial scrutiny solely on the existence of any contract for attorney's fees which may have been executed between the party and [the] attorney." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (plurality op.), *abrogated in part on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).  However, even if this factor is interpreted as focusing on the specific fee quoted to plaintiffs at the outset of the litigation, the Court finds that the apparent absence of any prearranged fee weighs in favor of the requested award.  *See id.* ("The fee quoted to the client, or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." (internal quotation marks omitted)); *Johnson*, 488 F.2d at 718 (indicating that fee amount agreed upon at outset of litigation is a factor to be considered in determining reasonableness of requested fee); *Brody*, 167 P.3d at 200-01 (finding that *Johnson* factors weighed in favor of fee award where "there was no prearranged fee other than an understanding the fee would be contingent on the outcome").

omitted). *See also Dalal v. Alliant Techsystems, Inc.*, 927 F. Supp. 1374, 1381 (D. Colo. 1996) ("The degree of success a plaintiff enjoys is a critical factor in determining the amount of fees to be awarded." (internal citations and quotations omitted)).   Here, the $4,650,000.00 settlement represents a significant recovery on behalf of the settlement classes in light of the numerous risks.  Further, net settlement fund (total settlement fund mins attorneys' fees and costs, service awards, and settlement administration costs) funds is slightly more than 100% of the claimed unpaid wages.  *See* Doc. No. 62 at 5.  Class counsel obtained this result despite serious questions as to whether the class could be certified under Fed. R. Civ. P. 23 and whether the plaintiffs could prevail on the claims that the meal breaks were interrupted, or the meal breaks were spent predominantly for the benefit of the employer.  *Id.*  Given the risks involved, the Court finds that the relief provided by the settlement represents an excellent result for the settlement class.  *See Brown*, 838 F.2d at 456 (finding that the results obtained by the settlement "may be given greater weight [in the *Johnson* analysis] when . . . the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class"); *Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement). In sum, the $4.65 million settlement represents an excellent result given the circumstances of the case, and thus, the "amount involved, and results obtained" factor supports the proposed fee award.

9.     **The Undesirability of the Case**

The primary issue that renders a case undesirable is risk.  Although this case settled fairly early, it involved the clear risk to Class Counsel of several years of litigation (including possible appeals) and tens of thousands of dollars, if not more, in costs related to litigation, without any

guarantee of compensation. This risk was even more weighty considering the factual and legal issues involved, and especially where Class counsel belongs to a two-person law firm.   Doc. No. 63-1 at 4, ¶ 14. The Court agrees that counsel's time spent, and out-of-pocket costs was not an insubstantial burden, given the significant risk that plaintiffs would be unable to obtain any recovery. The relative undesirability of this case therefore weighs in favor of the requested fee award.  *See In re Qwest*, 625 F. Supp. 2d at 1152-53 (finding that risk borne by lead counsel was key factor in assessing desirability of the case).

**10.     The Experience, Reputation, and Ability of the Attorneys.**

Class Counsel has extensive experience in wage and hour litigation, including class and collective action cases. See Doc. No. 63-1 at 2, ¶¶ 3-4. Counsel has shown her ability by achieving the excellent result obtained for the Class in this case. The "experience, reputation and ability" of Class Counsel, therefore, supports the requested fee award.

**11.     Nature and Length of Professional Relationship with the Client**

"[A] lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." *In re Qwest*, 625 F. Supp. 2d at 1153.  Class counsel states that "the unpaid wage claims asserted in this case do not lend themselves to continuous, long-term attorney-client relationships."  Doc. No. 63 at 10.  As there is "no indication that . . . counsel adjusted the agreed fee in this case based on any special relationship with the lead plaintiffs," the Court finds that this factor weighs in favor or the requested fee award.  *See In re Qwest*, 625 F. Supp. 2d at 1153.

**12.     Lodestar Crosscheck**

Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount.  *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *see also*

*Brody*, 167 P.3d at 201 (noting that, "[t]ypically, courts use the percentage method and then crosscheck the adequacy of the resulting fee by applying the lodestar method"). Class counsel seeks $1,550,000 in attorney's fees and costs for approximately 852 hours spent on the litigation. The requested fee reflects a 3.61 multiplier on counsel's lodestar amount.

The Court finds the number of hours expended on this case to be reasonable given that the litigation has been ongoing since 2018 and has involved written discover, and extensive informal discovery, and intense settlement negotiations which were conducted over a period of about 6 months. The hourly rate charged by class counsel of $550-$600 per hour is also generally consistent with the rates charged in other cases in this district. *See Shaw*, 2015 WL 1867861, at *8 (approving of hourly rates ranging from $675 per hour for attorneys and $150 per hour for staff members involved in litigation). *See, e.g.*, *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (lodestar multiplier of 3.65 in the cross-check analysis was reasonable). Accordingly, the lodestar crosscheck supports the reasonableness of the requested fee.

Having considered the applicable Johnson factors, the Court finds that requested attorneys' fees and costs fair and reasonable, and the Court thus grants the Motion as to the fees and costs.

## V.    COSTS

Class counsel's requested fee award includes $12,800.00 in out-of-pocket litigation expenses. *See* Doc. No. 109-1 at 5; ¶ 13. The Court finds a $12,800.00 in litigation expenses is reasonable in the context of this case.

"Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Brody*, 167 P.3d at 205-06 (citing *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993)). Here, the requested costs are for "filing fees, video-recoding of class member interviews for settlement negotiations, and mediator fees." Doc. No. 63-1 at 5, ¶ 20. The Court concludes that these are the type of costs normally billed to clients. *See In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014) (finding fees for computer research, investigation, and experts/consultants to be "of the type normally billed to clients"). The Court also finds that there have been no objections to counsel's request for costs and that the costs are reasonable given the nature and duration of this lawsuit. *See Shaw*, 2015 WL 1867861, at *8 (awarding $62,388.58 in litigation expenses in wage-and-hour class action lawsuit).

## VI.    SERVICE/INCENTIVE AWARD

When considering the appropriateness of an award for class representation, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

The settlement provides for a service payment of $80,000 for the class representatives. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII- A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). The representative

plaintiffs, especially Mr. Rothe, spent considerable time and effort working on the case with counsel. The litigation will yield individual payouts to class members to over 100% of damages. The representative plaintiffs' commitment to the case, the personal sacrifices of time while pursuing this litigation, and the outcome achieved warrants a significant award in this case. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). No member of the settlement class has objected to the payments, which were disclosed in both the settlement agreement and the notice sent to class members. *See* Doc. No. 62-1 at 5, ¶ 11. The Court concludes that the enhancement payments are reasonable compensation for the named plaintiff participation in the lawsuit. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding that $7,500 service award was "appropriate and . . . commensurate with awards in similar cases"); *Wornicki v. Brokerpriceopinion.com*, No. 13-cv-03258-PAB-KMT, Doc. No. 170 at 21-22 (D. Colo. Sept. 20, 2018).

## VII.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1.   The Court shall retain jurisdiction over the interpretation and implementation of the Settlement Agreement;

2.   The parties' Joint Motion for Final Certification of Class and Collective Action and for Final Approval of Settlement Agreement (Doc. No. 62) is GRANTED;

3.   Plaintiff's Motion for Attorney Fees and costs (Doc. No. 63) is GRANTED;

4. The parties' Settlement Agreement (Doc. No. 47-1) is APPROVED;

5. Service award for named plaintiffs is APPROVED;

6. Settlement Administrator (Simpluris, Inc.) costs are APPROVED;

7. Pursuant to the parties' stipulation in the Settlement Agreement, Parties shall file a final report on payments to the class members on or before….; and

8. Parties shall file a Motion for Dismissal of claims with prejudice.


DATED this 24th day of June, 2021.

BY THE COURT:

_____
R. BROOK JACKSON
U.S. DISTRICT COURT JUDGE